ARMSTRONG, Judge.
The defendant, Larry Williams, was charged by bill of information with manslaughter, a violation of R.S. 14:31. Following a trial by jury he was found guilty as charged. He was sentenced as a second felony offender to twenty-one years at hard labor with credit for time served. It is from this conviction and sentence that the defendant has appealed.
Penny Johnson, the mother of the two-year old victim, Chanada, testified that she, Chanada and two of her other children, Roschee and Kiyon, had been living with the defendant, her boyfriend, since August 12, 1987. She said that on February 6, 1988, the day of the incident at issue, she fed her three children and left them home with the defendant to go to the VCR store with Alex Pierre, her brother. Although Chanada had fallen down the night before and hit her head on the bed post, she appeared to be fine that morning. Penny was gone from about 10:00 a.m. until about 1:00 p.m. When she returned, Chanada was lying on the floor on a pallet in the bedroom where she usually slept. She appeared to be fine.
*879 Penny then left home again, this time to go grocery shopping with her sister, Marva Jackson. When she returned she, Marva and the defendant put the groceries away. Then Penny went to Alex’s house, which was a couple of houses away, to do laundry. She did not check on or see Chanada before she left.
After she had been at Alex’s for about fifteen or twenty minutes, the defendant knocked on the door. He said that they had to come see about Chanada because she was limp and not breathing properly.
Alex, Penny and Alex’s girlfriend, Brenda Louding, ran over to Penny’s house. Chanada was cold, limp and not breathing properly. Brenda performed CPR on Cha-nada. Then Brenda, Alex, Penny and the defendant rushed Chanada to Humana Hospital. Chanada was subsequently transferred to Children’s Hospital where she died two days later.
Dr. Randall Craver and Dr. Paul McGar-ry testified as expert pathologists for the State. Dr. Craver began the autopsy on Chanada on February 8, 1988. Once he discovered that Chanada had a skull fracture at the base of her neck, he called in Dr. McGarry to assist him in completing the autopsy.
They found that Chanada had four bruises on her face in a line from her left eye to her jaw and that her skull had been fractured at the base of her neck. They observed hemorrhaging in the tissues around the fracture and at the base of the brain plus massive swelling in the brain. Additionally, the brain stem had been torn. They also noted that Chanada suffered from congestion and early pneumonia.
Both doctors concurred that the cause of Chanada’s death was a blunt head injury. They opined that Chanada had been struck in' the face with a fist which had caused the back of her head to go back and hit a hard object. They found that the four bruises on the Chanada’s face were consistent with four knuckles hitting her face. They measured the defendant’s knuckles and found that they matched the size of the bruises. They found that the skull fracture at the base of Chanada’s neck was the same age as the four bruises on the victim’s face and was consistent with the back of Chanada’s head hitting a hard object after her face was punched with a fist.
They found that the injuries were not consistent with Chanada’s running into a table or falling off a bed or bicycle. They further indicated that these injuries would result in an immediate loss of consciousness and a decrease in vital functioning which would affect the heart and render the victim unable to breathe properly.
This matter was referred by the Child Protection Service to Joe Hebert with the NOPD Child Abuse Unit. When Joe Hebert initially interviewed the defendant, the defendant told him that, on the day of the incident, he had given Chanada a bath; that afterwards, Chanada told him that she wanted to take a nap; that, after she had napped for a while, he called to her but received no response. He then discovered that she was limp and was having difficulty breathing at which point he went to find Penny, Chanada’s mother. Detective Hebert interviewed the defendant a second time once he had received the autopsy report. During the second interview, the defendant became a suspect and was subsequently arrested.
A review of the record reveals that there are no errors patent.
On appeal defendant asserts one assignment of error.
By that assignment of error defendant contends that the trial court erred in denying his motion for new trial based upon the State’s alleged non-disclosure of Brady evidence and the discovery of new evidence.
Sharmaine Watson, a former secretary at Children’s Hospital, testified at the hearing on the motion for new trial that, after the defendant was convicted and after she had been terminated from her employment at Children’s Hospital, she contacted the D.A’s office regarding certain information concerning Dr. Craver, one of the pathologists who conducted the autopsy of the victim. Receiving no response, she got in touch with defense counsel.
*880 She said that she was the typist for Dr. Craver; that Dr. Craver received a telephone call from Detective Hebert before he performed the autopsy oh Chanada and another one afterwards; that, after receiving the second call from Hebert, Dr. Craver made changes in his report. Ms. Watson had kept a copy of Dr. Craver’s initial report and of the second version. These were made part of the record, although we have not been provided with copies of them. According to Ms. Watson’s testimony the changes included the following:
1. Dr. Craver initially described the fracture as a “hairline” fracture and changed the description to a “jagged” fracture.
2. Dr. Craver’s preliminary diagnosis was “massive cerebral edema.” His amended diagnosis was “blunt head trauma.”
3. Dr. Craver changed his description of the victim’s musculoskeletal system. (Ms. Watson did not indicate at the motion for a new trial hearing the nature of this change).
No other testimony was presented.
On appeal, the defendant urges that the evidence produced at the motion for new trial is Brady evidence; that the State was under a continuing duty to produce this evidence under C.Cr.P. art. 729.3; thus the trial court erred in denying the motion.
The record indicates that the State was not informed of this information until after the defendant was convicted. Defense counsel at the motion for new trial states that the State was not aware of this information before trial. While it is true that the State is under a continuing duty to inform the defense of exculpatory evidence under C.Cr.P. art. 729.3, there is no authority to support the defendant’s contention that this duty continues after the defendant is convicted. The discovery articles indicate otherwise. C.Cr.P. art. 729.3 applies to discovery orders violated “prior to or during trial.” C.Cr.P. art. 729.6 provides that the discovery articles apply to cases which “are to be tried” in the trial court. Thus, the defense argument that the motion for new trial should be granted based upon the State’s failure to disclose Brady evidence is without merit.
The trial court also did not err in denying the motion for new trial based upon newly discovered evidence.
C.Cr.P. art. 851 provides:
Art. 851. Grounds for new trial
The motion for a new trial is based on the supposition that injustice has been done the defendant, and, unless such is shown to have been the case the motion shall be denied, no matter upon what allegations it is grounded.
The court, on motion of the defendant, shall grant new trial whenever:
(1) The verdict is contrary to the law and the evidence;
(2) The court’s ruling on a written motion, or an objection made during the proceedings, shows prejudicial error;
(3) New and material evidence that, notwithstanding the exercise of reasonable diligence by the defendant, was not discovered before or during the trial, is available, and if the evidence had been introduced at the trial it would probably have changed the verdict or judgment of guilty,
(4) The defendant has discovered, since the verdict or judgment of guilty, a prejudicial error or defect in the proceedings that, notwithstanding the exercise of reasonable diligence by the defendant, was not discovered before the verdict or judgment; or
(5) The court is of the opinion that the ends of justice would be served by the granting of a new trial, although the defendant may not be entitled to a new trial as a matter of strict legal right.
For a motion for new trial based upon newly discovered evidence to be granted, the defendant must prove:
1) That the new evidence was discovered after trial.
2) That failure to discover the evidence prior to trial was not due to the defendant’s lack of diligence.
3) That the evidence is material to the issues at trial.
*881 4) That the evidence is of such a nature that it would probably produce a different verdict in the event of retrial, (emphasis added)
State v. Knapper, 555 So.2d 1335 (La.1990)
In this case, Ms. Watson’s testimony indicates that Dr. Craver modified his preliminary report. No testimony was presented, however, regarding the significance of theses changes and what, if any, bearing they had on defendant’s guilt or innocence. No evidence was presented which would tend to show that the initial report, which was subsequently changed by Dr. Craver, was in any way exculpatory. Thus the defense failed to demonstrate that a different verdict would probably have been reached had the jury heard the new evidence. Thus this assignment of error is without merit.
For the foregoing reasons the defendant’s conviction and sentence are affirmed.
AFFIRMED.